# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DANIEL T. LEE,**

    Plaintiff,

  v.                                                           **Case No. 20-CV-102**

**JEFFREY MANLOVE,**
**MARY MOORE,**
**CHRYSTAL MARCHANT, and**
**JANE DOE,**

    Defendants.

## SCREENING ORDER

Plaintiff Daniel T. Lee, an inmate at Waupun Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his civil rights. This case is before me now on Lee's motion for leave to proceed without prepaying the filing fee and for screening his complaint.

I have jurisdiction to resolve Lee's motion to proceed without prepaying the filing fee and to screen the complaint in light of Lee's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. **Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because Lee was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows a prisoner plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On February 4, 2020, the court ordered Lee to pay an initial partial filing fee of $19.75. (ECF No. 7.) Lee paid that fee on February 18, 2020. I will grant Lee's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. **Screening the Complaint**

*2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v.*

*Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and it holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Lee's Allegations*

Lee alleges that, on May 10, 2013, defendant Jane Doe nurse informed him that the results of his HIV test were negative. He asserts that, on November 7, 2014, while reviewing ultrasound reports with defendant Dr. Jeffrey Manlove, he saw a cover letter from the Wisconsin State Laboratory of Hygi[e]ne, which stated that

3

additional testing was required. According to Lee, he asked Dr. Manlove what the results of his HIV test were, and Dr. Manlove said they were negative.

On May 8, 2018, a urogram procedure was conducted at UW Health. About a month later an MRI was conducted at UW Health. Lee asserts that, on May 17, 2016, Dr. Manlove informed him that he had a tumor on his right kidney. About a month later, a partial nephrectomy was performed. In January and July 2017, Lee went to UW Health for follow-up CT scans to see whether the cancer had returned.

According to Lee, on June 26, 2018, he wrote to defendant Chrystal Marchant to complaint about inadequate treatment and follow-up care. He asserts that she responded within a week and informed him that, after reviewing his medical files, she determined that appointments for x-rays and ultrasounds had been scheduled. Lee states that a few days later, on July 6, 2018, an ultrasound and chest x-rays were performed.

Lee explains that, on August 22, 2018, a CT scan with contrasting dye was performed at Waupun Memorial Hospital. Lee states that, after asking a nurse what procedure was being performed, she explained that Dr. Manlove had ordered an ultrasound of all of Lee's internal organs and that his institution had failed to send the CD with the results of the July 6, 2018 ultrasound.

On July 29, 2019, Lee states that he became lightheaded, dizzy, lost control of his facial muscles, and started to drool for about ninety seconds. Lee was escorted to health services. According to Lee, nurse Bob (who is not a defendant) checked his

4

vitals, performed an EKG, and ordered a urine test. About a week later, Lee spoke with defendant nurse practitioner Mary Moore, who told him everything was okay.

After receiving a copy of the lab results, Lee wrote to Marchant on August 13, 2019 and complained that Moore had provided him with false information about his results. Marchant responded that she would schedule him for an appointment with his provider to further discuss the results.

*2.3 Analysis*

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim,* 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. The court asks 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). "[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference . . . ." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Lee's allegations fail to state a claim. Lee first asserts that Jane Doe nurse and Dr. Manlove were deliberately indifferent to his serious medical needs when they told him that the results of his HIV test were negative. Lee asserts that the results, which

5

he attaches in support of his complaint, were inconclusive and that the report indicated he needed further testing. These allegations are insufficient to state a claim for a couple of reasons. First, Lee has not alleged that he suffers from an objectively serious medical condition. Nowhere does Lee allege that, since being told he did not have HIV, he learned that he actually does have HIV or that he is exhibiting symptoms suggesting that he may have HIV. Thus, I cannot reasonably infer that he satisfies the first prong of the standard.

Also, Lee's interpretation of the test results is incorrect. The result stated that the HIV-1/HIV-2 Ag/Ab was "Non-reactive." (ECF No. 1-1 at 5.) The comments explain that, "Repeatedly reactive specimens are automatically followed up with confirmatory testing for HIV-1 or HIV-2 as appropriate." (*Id.*) But, Lee's test results were not "repeatedly reactive"; they were non-reactive. So no follow-up testing was indicated on that basis. The comments go on to explain that, a result that is non-reactive "does not exclude the possibility of infection with HIV-1 or HIV-2. Nonreactive results may be because of antigen and antibody levels that are below the limits of detection of the assay." (*Id.*) This is merely a qualification of the results. Nowhere does the comment indicate that further testing of a non-reactive specimen is required. Lee's disagreement with his providers' medical judgment that further testing was not warranted cannot form the basis of a § 1983 claim.

Lee also fails to state a claim against Marchant. On two occasions Lee wrote to health services complaining about inadequate care; Marchant promptly responded both times. The first time, Lee complained that a nurse had told him that required

follow-up testing had not been scheduled. Marchant responded that tests had been scheduled. An ultrasound and x-ray happened a few days later, and a CT scan happened the next month. The second time, Lee complained that a nurse practitioner had given him incorrect information about his urine test results. Marchant promptly scheduled him for an appointment with his provider so he could talk more about the results. Nothing suggests Lee was suffering from an objectively serious medical condition, and, even if he had been, Marchant's prompt and courteous responses to his concerns are the opposite of deliberate indifference.

Finally, for many of the same reasons, Lee fails to state a claim against Moore based on his allegations that she gave him inaccurate information about his urine test results. Moore allegedly told Lee that the test indicated that everything was ok. Lee, who apparently received a copy of the results, disagreed with her assessment. He highlighted comments in the results that he believed indicated everything was *not* ok. After raising his concerns, he was scheduled to be seen by his provider to discuss the results further.

Lee again fails to allege that he suffered from an objectively serious medical condition. But, even if he did, his allegations that Moore misinterpreted his test results would be insufficient to state a claim. Assuming Moore's assessment was incorrect and everything was *not* ok, her error would amount to nothing more than medical malpractice, which is not actionable under § 1983.

**THEREFORE, IT IS ORDERED** that Lee's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Lee shall collect from his institution trust account the $330.25 balance of the filing fee by collecting monthly payments from Lee's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Lee is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Lee is confined.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of

App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2020.

                                                       **BY THE COURT:**

                                      s/*Nancy Joseph*
                                      Nancy Joseph
                                      United States Magistrate Judge